IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| WES BURCH and JANICE BURCH<br>d/b/a Integrative Communications | §<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. G-11-192 |
| | § | |
| TECHNICAL SYSTEMS INTEGRATORS,<br>LLC | §<br>§<br>§ | |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendant, Technical Systems Integrators, LLC (TSI); the Motion seeks the dismissal of all claims asserted against it by Plaintiffs, Wes and Janice Burch d/b/a Integrative Communications (IC) in their Original Petition.

The relevant facts are all but undisputed. In 2010, Dell, Inc., had a contract with the University of Texas Medical Branch (UTMB) to sell UTMB approximately 4,500 new computers and to install them at various sites on the Galveston campus. Dell also had an existing Master Services Agreement with TSI to install its computers as needed. On February 22, 2010, Dell and TSI signed an Addendum to the Master Services Agreement which provided that TSI would install the computers at UTMB. Following subsequent negotiations with Wes Burch, TSI subcontracted the installation work to IC on October 1, 2010, by entering into a written "Managed Deployment" contract (Agreement) for an "Estimated Quantity" of 4,500 computers at a price of $60.00 per installation. The Parties experienced difficulties during the performance of their contract. TSI claims IC failed to timely and properly install many of the new computers and delayed submission of the paperwork needed to bill UTMB. But many of the computers provided by TSI were defective and had to be removed and replaced after failing at "some step" of the installation process. Despite

these problems, however, the Parties persevered without any declarations of breach. Unfortunately, in December, 2010, UTMB terminated the installation portion of its contract with Dell and Dell, in turn, abandoned the Addendum with TSI. As a result, TSI paid what it determined was owed to IC and terminated the Agreement. At the time of IC's termination about 400 computers had been installed.

On March 10, 2011, Plaintiffs sued TSI in state court for breach of contract, fraud and negligent misrepresentation.[1] On April 11, 2011, TSI filed its Original Answer and Counter-Claim asserting claims for breach of contract, fraud, negligent misrepresentation and business disparagement. Then, on April 18, 2011, TSI removed the case. Both Parties now seek summary judgment.

## MOTION FOR SUMMARY JUDGMENT OF TSI

### Breach of Contract

Regardless of whether the Agreement is, as TSI argues, terminable-at-will, IC's breach of contract claim fails because UTMB's termination of its installation contract with Dell rendered TSI's performance legally "impossible." IC's arguments that TSI's contractual "guarantee" to pay IC for 4,500 installations was absolute and that UTMB's termination was sufficiently foreseeable to negate TSI's defense are unpersuasive. The contract expressly "Estimated" the quantity of installations to be 4,500 and IC's attempt to convert that estimate into a guarantee through evidence that during pre-contract negotiations TSI's representative, Ben Howe, said "it was going to be at least 4,500," is barred; "to hold otherwise would turn contract law on its head and vitiate the parole evidence rule."

---

[1] IC appears to have abandoned its claim, if any, that TSI is liable for not preventing UTMB, after TSI terminated the Agreement, from hiring two of the independent contractors IC had hired to install the computers.

Boggan v. Data Systems Network Corp., 969 F.2d 145, 153 (5th Cir. 1992) (applying Texas law.)

In addition, foreseeability, as a factor in determining the viability of an impossibility defense, has "gradually decreased in importance." Centex Corp. v. Dalton, 840 S.W. 2d 952, 954-55 (Tex. 1992) (citing, with favor, Opera Company of Boston v. Wolf Trapp Foundation, 817 F.2d 1094 (4th Cir. 1987))   Currently, a party relying on the defense of impossibility of performance must establish 1) the unexpected occurrence of an intervening act, 2) such occurrence was of such a character that its non-occurrence was a basic assumption of the agreement of the parties, and 3) that occurrence made performance "impracticable." Id. at 1102  To require an absolute absence of foreseeability would, if accepted, "practically destroy the doctrine of supervening impossibility, notwithstanding its present wide and apparently growing popularity." L.N. Jackson & Co. v. Royal Norwegian Government, 177 F.2d 694, 699 (2d Cir. 1949)   Obviously, IC and TSI entered into their Agreement under the assumption that UTMB would not terminate its contract with TSI, and UTMB's termination made TSI's continued performance under the Agreement sufficiently "impracticable" to establish TSI's defense and insulate it from IC's breach of contract claim regardless of the alternative merits of the claim.

### Fraud

This Court cannot condone IC's attempt to conjure a fraud claim from the facts in this case. IC's counter-intuitive conclusion that TSI "never intended to complete the contract as stated because it knew that if anything happened, then it intended on prematurely terminating Plaintiffs" is, based, at best, upon mere, reactionary speculation. All TSI can legitimately be accused of is failing to honor its Agreement, to continue paying IC, by terminating the Agreement after UTMB's action rendered continued performance impracticable. Consequently, IC's damages, if any, would be based

upon economic losses under the contract; this cannot be the basis for a fraud claim. Crim Truck & Tractor Co. v. Navistar International Transportation Corp., 823 S.W. 2d 591, 597 (Tex. 1992) IC's fraud claim is simply not cognizable under Texas law on the facts of this case.

### Negligent Misrepresentation

IC's claim for negligent misrepresentation is based upon TSI's alleged guarantee that 4,500 computers would be installed and its alleged purposeful concealment of the ability of Dell to cancel its contract with TSI. This claim fails on both counts. First, TSI made no such "guarantee" as explained above. Second, the "economic loss rule" bars a negligence claim where the alleged loss arises out of a contractual relationship breached by the defendant. Lamar Homes, Inc. v. Mid-Continent Casualty Co., 242 S.W. 3d 1, 12-13, (Tex. 2007) Moreover, it appears that despite Ben Howe's testimony to the contrary, Dell never did terminate the Master Services Agreement or the Addendum with TSI.

### Conclusion

For the foregoing reasons, it is **ORDERED** that the "Motion for Summary Judgment" (Instrument no. 33) of TSI is **GRANTED** and all claims asserted by IC against TSI are **DISMISSED**.

### MOTION FOR PARTIAL SUMMARY JUDGMENT OF IC

### Breach of Contract

It is unclear why UTMB terminated its contract with Dell. It may have become intolerably frustrated with IC's work or intolerably frustrated with the recurring failures of the computers or both. It may have just determined that it could save money by installing the computers itself after observing the process. UTMB's reasons, however, are immaterial to the determination of TSI's

breach of contract claim. On the other hand, the non-party presence of UTMB in this case casts this claim into a different light.

Both TSI and IC had a duty to each other to perform their respective contractual obligations in a proper manner to assure the completion of the UTMB project. Both TSI and IC breached their duties: IC by some of its conduct related to its installation duties and TSI by providing faulty computers under the Agreement.[2] "In every contract between a contractor and his sub-contractor, the law implies an obligation on the part of the contractor to so perform his part of the work that the sub-contractor's ability to perform his work is not prevented or impaired." Hyatt Cheek Builders v. Board of Regents of the University of Texas System, 607 S.W. 2d 258, 267 (Tex. Civ. App. -- Texarkana, 1980)   By illustration, had UTMB sued TSI and IC, they would have been *in pari delicto* as to each other: they have breached a duty to one another and neither could seek indemnity from the other. Id. The absence of UTMB as the party-plaintiff, however, does not change the nature of the relationship between TSI and IC. TSI is barred from recovery by its own dereliction of duty. A party to a contract who is itself in default cannot maintain a suit for its breach. (citing Colorado Interstate Gas Co. v. Hunt Energy Corp., 47 S.W. 3d 1, 9 (Tex. App. -- Amarillo, 2000) rev. denied. (2001) (citing Houston County v. Lee L. Landauer & Associates, Inc., 424 S.W. 2d 458, 464 (Tex. Civ. App. -- Tyler, 1968, writ ref'd))

---

[2] The "Managed Deployment" Agreement obligates TSI, not Dell, to provide "adequate resources to meet time frames for applicable services selected by" UTMB.

5

Business Disparagement

The entire basis of TSI's counter-claim for business disparagement is contained in a single sentence: "*On information and belief*, W. Burch has made disparaging comments to *Dell employees* alleging that TSI cannot be trusted and does not pay its bills on time." (emphasis added)   To support the claim, TSI relies solely on the deposition testimony of Wes Burch; however, when that deposition testimony alleged to be disparaging is read in its entirety, TSI's claim is revealed as "much ado about nothing." Burch flatly denied he told anyone "TSI was run by a bunch of crooks." He testified that he "*might* have said I didn't trust (TSI) on this project," but did not remember doing so; this is hardly an admission. And any statement that "TSI doesn't pay its bills," however articulated, has, at least, a grain of truth to it. TSI did refuse to pay at least IC's final invoice which Burch believed, strongly enough to file this lawsuit, was owed under the contract. Moreover, TSI has not identified any specific person, much less any "Dell employees" to whom the allegedly derogatory comments were made. The evidence relied upon by TSI to support this claim cannot, in this Court's opinion, establish a submissible case.

Conclusion

For the foregoing reasons, it is **ORDERED** that the "Motion for Partial Summary Judgment" (Instrument no. 32) is **GRANTED** and TSI's claims for breach of contract and business disparagement against IC are **DISMISSED**.

**DONE** at Galveston, Texas, this _____15th_____ day of August, 2012.

_____
John R. Froeschner
United States Magistrate Judge